UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CHRISTOPHER ROBERT KOZA,                               :

                Plaintiff,                   :        <u>OPINION & ORDER</u>

          -v.-                                  :        22 Civ. 889 (GWG)

COMMISSIONER OF SOCIAL SECURITY,          :

             Defendant.                   :
-----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

       Plaintiff Christopher Robert Koza brings this action pursuant to 42 U.S.C. § 405(g) to

obtain judicial review of the final decision of the Commissioner of Social Security (the

"Commissioner") denying his claim for benefits under the Social Security Act ("the Act").  <u>See</u>

Complaint, filed Feb. 2, 2022 (Docket # 1) ("Compl.").  Both Koza and the Commissioner have

moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1]

       For the reasons set forth below, Koza's motion is denied, and the Commissioner's cross

motion is granted.

I.  <u>BACKGROUND</u>

      A.  <u>Procedural History</u>

       On July 17, 2018, Koza applied for Social Security Disability Insurance Benefits,

Supplemental Security Income, and Social Security Child's Insurance Benefits.  Administrative

Record, filed June 23, 2022 (Docket # 12) ("R."), at 258, 261, 282.  The Social Security

---

[1]  Plaintiff's Motion for Judgment on the Pleadings, filed Aug. 23, 2022 (Docket # 14);
Memorandum of Law, filed Aug. 23, 2022 (Docket # 15) ("Pl. Mem."); Defendant's Motion for
Judgment on the Pleadings, filed Oct. 18. 2022 (Docket # 17); Memorandum of Law in Support
of Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's
Motion for Judgment on the Pleadings, filed Oct. 18, 2022 (Docket # 18) ("Def. Mem.");
Plaintiff's Reply Brief, filed Nov. 14, 2022 (Docket # 19) ("Pl. Reply").

Administration ("SSA") denied Koza's applications on September 25, 2018.  See R. 103, 107.

Koza requested a hearing before an administrative law judge ("ALJ") to challenge the initial

denial.  R. 117, 120.  A hearing took place via teleconference on June 8, 2020.  See R. 49-76.  In

a written decision dated August 4, 2020, the ALJ found that Koza was not disabled under the

relevant statutes and denied Koza's claims.  See R. 10-24.  The SSA Appeals Council denied a

request for review.  R. 1.  Koza filed this action on February 2, 2022.  See Compl.

      B.  The Hearing before the ALJ

Koza appeared by telephone at the ALJ's June 8, 2020, hearing with an attorney.  R. 51-

52.  Vocational Expert ("VE") Yaakov Taitz was present at the hearing and also testified.  Id.  At

the time of the hearing Koza was 20 years old.  See R. 16, 51.[2]

The record reflects that Koza testified that at the time of the hearing he lived with his

parents and had graduated high school in June 2018, two years earlier.  R. 55-56.  Koza would

attempt to do homework and chores while in high school, but "most of the time" was not able to

do so because of depression and stress.  R. 57.  Since graduation, he had generally been at home

every day except for doctor's appointments and that at home he did dishes and laundry when

reminded.  R. 57-58.  Koza never held a job.  R. 60.  Koza said he would experience stress and

sudden anger "out of nowhere."  Id.  Koza had a history of asthma, foot problems that affected

what shoes he could wear and how long he could wear them for, and tremors in his arms.  R. 60-

61.

At the hearing, the ALJ questioned the VE as follows:

      Q      Hypothetical #1, I'd like you to assume a hypothetical person of
claimant's age, education, and work history.  The person has the residual
functional capacity to perform a full range of work at all exertional levels, but

---

[2]  The hearing transcript reflects that Koza stated he was "22" years old at the time of the
hearing.  R. 55.  Either there was an error in the transcription or Koza misstated his age.

with the following non[-]exertional limitations.  The person cannot climb ropes, ladders, or scaffolds.  The person must avoid unprotected heights and hazardous machinery.  And the person can understand, remember, and carry out simple, routine, repetitive work-related tasks with only occasional contact with the public, coworkers, and supervisors.  Is there any work in the national economy for such a person?

        A        Yes . . . Okay, so hand packager, DOT code #920.587-018, exertion medium, SVP 2.  For this DOT code, there are 80,000 jobs in the national economy.  Cleaner, DOT code #381.687-018, exertion medium, SVP 2.  For this DOT code, there are 50,000 jobs in the national economy. . . .  And dining room attendant, DOT code #311.677-018, exertion medium, SVP 2.  For this DOT code, there are 140,000 jobs in the national economy.

***

        Q        And if I was to give you Hypothetical #1 again, but I was to add the person would be off task 15% of the -- of the workday, in addition to regularly scheduled breaks, would that person be able to find any jobs in the national economy?

        A        No jobs.

R. 68-70.

    C.  <u>The Medical Evidence</u>

Both Koza and the Commissioner have provided detailed summaries of the medical evidence.  Pl. Mem. at 3-7; Def. Mem. at 3-5, 8-9.  The Court directed the parties to specify any objections they had to the opposing party's summary of the record.  <u>See</u> Scheduling Order, filed June 24, 2022 (Docket # 13), ¶ 5.  Neither party made any specific objections to the opposing side's summary of the record.  Accordingly, we adopt the parties' summaries of the medical evidence as accurate and complete for purposes of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

    D.  <u>The ALJ's Decision</u>

The ALJ denied Koza's application on August 4, 2020, determining that Koza was not "under a disability within the meaning of the Social Security Act from November 5, 1999, through the date of this decision."  <u>See</u> R. 10, 14.

3

In accordance with the five-step test set forth in the SSA's regulations, the ALJ first found that Koza had "not engaged in substantial gainful activity since November 5, 1999, the alleged onset date." R. 16.  At step two, the ALJ found that Koza had "the following severe impairments: obstructive sleep apnea, autism spectrum disorder, attention-deficit hyperactivity disorder (ADHD), learning disorder, post-traumatic stress disorder (PTSD), bipolar disorder, anxiety disorder and disruptive mood dysregulation disorder." Id.

At step three, the ALJ found that Koza did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 44.1525, 404.1526, 416.920(d), 416.925 and 416.926)." See R. 17; see also 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found no evidence of medical tests that would satisfy "listing 3.02 for chronic respiratory disorders" and no evidence that Koza "had exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart, as defined in 3.02D." R. 17. The ALJ found that Koza's mental impairments "singly and in combination" did not meet or equal listings 12.04, 12.06, 12.10, 12.11, and 12.15. Id.  The ALJ made this finding by applying the "paragraph B" criteria. R. 17-18.[3]

---

[3]  For mental disorders, the "Paragraph B" criteria describe how the SSA evaluates the extent to which a claimant's functioning is limited by a "mental disorder." See 20 C.F.R. Part 404, Subpart P, Appendix 1 §12.00(A).  "These criteria represent the areas of mental functioning a person uses in a work setting.  They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  [SSA] will determine the degree to which [a claimant's] medically determinable mental impairment affects the four areas of mental functioning and [ ] ability to function independently, appropriately, effectively, and on a sustained basis (see §§ 404.1520a(c)(2) and 416.920a(c)(2) of this chapter). To satisfy the paragraph B criteria, [claimant's] mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." Id. These criteria apply to listings 12.04, 12.06, 12.10, 12.11, and 12.15.  See id. (excluding listing 12.05).  A "Marked limitation" is defined as "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." See 20 C.F.R. Part 404,

Before moving to step four, the ALJ determined that Koza had the "residual functional capacity" ("RFC") to

> perform a full range of work at all exertional levels but with the following non[-]exertional limitations: The claimant cannot climb ropes, ladders or scaffolds.  The claimant must avoid unprotected heights and hazardous machinery.  The claimant can understand, remember and carry out simple, routine and repetitive work-related tasks with only occasional contact with the public, co-workers and supervisors.

R. 18.

At step four, the ALJ found that Koza had no past relevant work.  R. 22.  At step five, the ALJ considered Koza's RFC and the testimony of the VE, and he found that Koza was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 23.  As such, the ALJ found Koza was not disabled from November 5, 1999 through the date of the ALJ's decision.  Id.

## II.  GOVERNING STANDARDS OF LAW

### A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even where the administrative record may also adequately support contrary findings on particular issues, the

---

Subpart P, Appendix 1 §12.00(F).  An "Extreme limitation" is defined as when a person is "not able to function in this area independently, appropriately, effectively, and on a sustained basis."  Id.

ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and punctuation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and punctuation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citation and punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (punctuation omitted).

B. <u>Standard Governing Evaluation of Disability Claims by the Agency</u>

The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." <u>See id.</u> §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); <u>accord</u> <u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); <u>Craig v. Comm'r of Soc. Sec.</u>, 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth the five-step process that the Commissioner must use in evaluating a disability claim. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," <u>id.</u> §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments

that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience.  See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work that he or she has done in the past, i.e., "past relevant work."  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is able to do such work, then he or she is not disabled.  Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work.  Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.  DISCUSSION

Koza raises a single objection to the ALJ's disability determination: namely, that the ALJ erred in the RFC determination by failing to explain why the ALJ did not include certain limitations found by Alison Murphy, Ph.D.  Pl. Mem. at 9-14.  Koza argues that this failure resulted in an erroneous RFC, which in turn led to an erroneous determination at step five that work opportunities existed for Koza.  Id. at 13-14.

Dr. Murphy performed an evaluation of Koza that included the findings in a paragraph that began: "Vocational functional capacity is defined as the ability to function independently, appropriately, effectively, and on a sustained basis in each area below."  R. 527.  In this paragraph, Dr. Murphy made the following findings:

> Understand, remember or apply simple direction and instructions: Mild limitations.  Understand, remember, or apply complex directions and instructions: Moderate limitations.  Use reason and judgment to make work-related decisions: Moderate limitations.  Interact adequately with supervisors, co-workers, and the public: Moderate limitations.  Sustain concentration and perform a task at a consistent pace: Mild limitations.  Sustain an ordinary routine and regular attendance at work: Moderate limitations.  Regulate emotions, control behavior, and maintain well-being: Moderate limitations.  Maintain personal hygiene and appropriate attire: No evidence of limitations.  Awareness of normal hazards and taking appropriate precautions: No evidence of limitations.

R. 527.

The ALJ found Dr. Murphy's opinion "persuasive," and Dr. Murphy was the only medical authority for whose opinion the ALJ gave such a designation.  R. 21.  For his part, Koza does not contest that the ALJ could properly find Dr. Murphy's opinions persuasive.  Instead, he homes in on Dr. Murphy's findings that Koza has "moderate" limitations in his ability to "[s]ustain an ordinary routine and regular attendance at work" and to "regulate his emotions, [ ] control behavior[,] and maintain well-being."  See Pl. Mem. at 11 (referencing R. 21).  Koza notes that these limitations are not referenced in the RFC and argues that as a result the RFC is not supported by substantial evidence.  Id. at 9, 11, 13-14.

Generally, ALJs must provide reasons if they do not accept a portion of an opinion to which they had given significant weight.  Benique v. Kijakazi, 2021 WL 4894582, at *6 (S.D.N.Y. Sept. 10, 2021) ("It is not proper for a court to speculate that an ALJ 'implicitly incorporated' limitations identified by a doctor into an RFC assessment; instead, 'it is incumbent upon the ALJ to provide a detailed rationale for either rejecting the limitations or deeming them

accommodated by the limitations stated as part of the RFC assessment.'") (quoting Long v. Berryhill, 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019)), adopted, 2021 WL 4894612 (S.D.N.Y. Sept. 27, 2021).  Koza's argument here is a simple one: the ALJ failed to give reasons as to why he did not include the two moderate limitations at issue in his formulation of Koza's RFC, and thus the RFC is not supported by substantial evidence.  Pl. Reply at 3-4.

While there is some surface appeal to Koza's argument inasmuch as the RFC does not specifically mention the two limitations, the argument on closer analysis does not show that the RFC was not supported by substantial evidence.

We begin by addressing the moderate limitation in the ability to sustain an ordinary routine and regular attendance at work.  See R. 21, 527.  Koza apparently would have required the ALJ to find, based on his acceptance of Dr. Murphy's opinion, that Koza's limitations on sustaining an ordinary routine and regular attendance resulted in some exertional or non-exertional limitation that should have been incorporated into the RFC itself.  But to have "moderate" limitations in this area does not necessarily mandate such a result.  As one case recently noted, "[t]here is significant case law indicating that the ALJ's limitation of [a p]laintiff to 'simple, routine tasks' and 'working primarily alone, with only occasional supervision' accounts for [his or] her limitations for performing activities within a schedule and maintaining regular attendance."  Andrea N. v. Saul, 2020 WL 1140512, at *5 (N.D.N.Y. Mar. 9, 2020) (quoting Shannon v. Berryhill, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018)).  Thus, in Phillip D. v. Comm'r of Soc. Sec., 2022 WL 2872646 (W.D.N.Y. July 21, 2022), the court found that an RFC that included "simple, rote, three-step tasks . . . accounts for Plaintiff's moderate limitations" in "sustaining concentration[,] performing a task at a consistent pace[,] and sustaining an ordinary routine and regular attendance at work."  Id. at *4.  In Shannon, the court

found that "moderate limitations in the ability to maintain a schedule" were consistent with an RFC that limited to claimant to simple, routine tasks and working primarily alone.  2018 WL 6592181 at  *3; accord Lowry v. Comm'r of Soc. Sec., 2017 WL 1290685, at *4-5 (N.D.N.Y. Mar. 16, 2017) ("[T]he ALJ's RFC limited Plaintiff to simple, routine tasks, which accounted for a possible 'moderate' limitation in maintaining a routine."), adopted, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017); see generally Melisa G. v. Berryhill, 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) ("moderate limitations are not prohibitive of performing unskilled work").  We agree with such cases.  The "moderate" limitation in these areas did not require the ALJ to find that the claimant would be unable to work at any possible job on a consistent basis.

With respect to Koza's moderate limitation in regulating emotions, controlling behavior and maintaining wellbeing, see R. 21, 527, case law is sparse but logically the same principles apply.  Koza's moderate limitations in these behavioral areas do not reflect any particular exertional or non-exertional limitation.  The ALJ could properly account for Koza's moderate functioning in this area by providing in the RFC, as the ALJ did, that Koza should have "only occasional contact with the public co-workers and supervisors."  R. 21.  As was noted in Platt v. Comm'r of Soc. Sec., "[l]imitations in work complexity and in interpersonal interaction are often imposed to address a claimant's limitations in adaptive categories of functioning."  588 F. Supp. 3d 412, 422 (S.D.N.Y. 2022).

IV.  CONCLUSION

For the foregoing reasons, Koza's motion for judgment on the pleadings (Docket # 14) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Docket # 17) is granted.  The Clerk is requested to enter judgment.

SO ORDERED.

Dated:  September 18, 2023
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge